JAMES B. BROWN *v.* DAVID S. AUSTIN AND JOHN O. SAVERY.*

*Vendue Sale. Collector's Deed. Adverse Possession. Parol Evidence.*

A collector's deed of land sold at vendue to satisfy a tax assessed and laid upon all the land in a county at a specified amount per acre, transfers a perfect title as against all persons. The effect is to extinguish all prior claims, whether based upon title or possession. Hence a possession adverse to the owner prior to the collector's deed, is not available to aid in establishing a title against such deed.

The question was *held* properly submitted to the jury to find from the parol evidence introduced by the defendants, whether there were proper conveyances through to the defendants as claimed by them, the deeds not being on record and having been destroyed.

TRESPASS for cutting timber and wood on lot No. 53 of division 2 in the town of Brunswick. Plea, not guilty. Trial by jury, September term, 1865, POLAND, C. J., presiding.

* This case was heard at the August term, 1866, and decided at the August term, 1868.

The plaintiff read in evidence the records and proceedings of a collector's sale under an act passed in 1831, raising a tax of three mills per acre on the lands in the county of Essex to build a jail. It was conceded by the defendants, that all the proceedings referred to in said sale, were regular and legal, and that the collector's deed conveyed a valid title.

The plaintiff read in evidence a deed of said lot from H. D. Schoff, collector of said tax, to Jared Wells, dated June 9, 1833, said Wells having been the purchaser of said lot at said sale; and all the deeds through from said Wells to the plaintiff.

It was conceded by the defendants, that just prior to the commencement of this suit the defendant Savery, under a contract with the defendant Austin, cut and took away from said lot about 150 cords of wood.

The defendants then read in evidence the record of a deed of lot No. 61 in said Brunswick, and the lot lying north of 61 called "the possession lot," from Asahel Booth and wife to James Tewksbury, dated October 29, 1836; also the record of a deed of the same lots from James Tewksbury to Elijah Hadley, dated March 11, 1837; also the record of a mortgage deed of one undivided half of the same lots from N. H. Closson to J. S. Spaulding, dated November 24, 1838. The defendants then introduced evidence tending to prove that, as early as 1820, one Fuller was living on lot No. 61, and that about 1821 or 1822 he cleared about ten acres on the lot lying north of lot 61 (which was conceded to be lot No. 53), and cultivated the same for three or four years, and that he claimed to be the owner of the lot lying north of 61; that Fuller left both the lots about 1825 or 1826, and was succeeded in the possession and occupancy of the same by his son-in-law, Asahel Booth; that Booth lived on 61, but occupied what was cleared on 53, and cleared a little more, and claimed lot 53 down to 1836, when he conveyed to Tewksbury and left; that, after Booth left said lots, one Elisha Webster went into possession of lot 61 and what was cleared of 53, and occupied down to 1841. Webster lived in the vicinity of said lots, and is now dead. There was no evidence whom he occupied under, except what is hereinafter stated. The defendant

Austin testified that in 1841 J. S. Spaulding, of Claremont, N. H., came to Brunswick and claimed to be the owner of lots 61 and 53; that he made a contract and purchased said lots of Spaulding, and paid him a horse therefor; that said Spaulding duly executed therefor to him a deed of said lots; that he neglected to have said deed recorded; and that the deed was subsequently burned when his (Austin's) house was burned. Austin also testified that said Spaulding told him he had a deed from said Closson of the other undivided half of said lots, which was not recorded; that Spaulding subsequently sent him a deed from Closson to Spaulding of said undivided half; and that this deed was also burned at the same time with his deed from Spaulding. Austin also testified that, while Spaulding was at Brunswick, Spaulding and Webster had a settlement, and Webster accounted to Spaulding for the use of said lots while he had occupied them. Austin also testified that, immediately after making purchase of said lots of Spaulding, he went into possession thereof, claiming to own them, and had ever since occupied them without molestation by any one, and that no claim had ever been made to either of said lots by said Hadley or Closson, or by any one claiming under them. It appeared from the deeds, that said Hadley, Closson and Spaulding were all residents of Claremont, N. H. It was undisputed that Austin had undisputed possession of lot 61, except a small piece that was set off on an execution against Asahel Booth, and a small piece conveyed by said Hadley to Elisha Webster.

The plaintiff gave evidence tending to prove that in 1854 he sent one Johnson, a surveyor, in company with another man, to run and mark the lines around lot 53, and that Johnson, in the presence of the man with him, declared that he took possession of the lot for the plaintiff. The plaintiff also gave evidence tending to prove that, since Austin has claimed to be the owner of lot 53, he has suffered the fences to go wholly to decay, and that which was formerly cleared on 53, has now grown up again with bushes and trees. The plaintiff claimed there was no proper evidence in the case to be submitted to the jury, to connect the defendant Austin with the title of Hadley so that Austin could

have the benefit of the possession of Booth and Fuller, if such possession should prove to be adverse; and also that any adverse possession prior to the tax-sale under which the plaintiff claimed title, could not be available against that title.

But the court charged the jury that, if, from the evidence, they believed that there were proper conveyances of said lot 53 from Hadley to Closson, from Closson to Spaulding, and from Spaulding to the defendant Austin, then Austin would be entitled to the benefit of the possession of Booth and Fuller, if that possession was adverse. The court explained what would constitute an adverse possession, in a manner not objected to. The court also charged that an adverse possession of the lot would not be interrupted by a sale of the land for taxes; that this would be the same as a sale of the land by the true owner. The plaintiff excepted to so much of the charge as is stated, and to the refusal to charge as the plaintiff claimed.

The jury gave a verdict for the defendants. They also found, specially, that Fuller and Booth held said lot, claiming title to the same, and that the title was regularly transmitted by deed from Booth down to the defendant Austin, and that Austin, and those under whose title he held, had occupied said lot adversely for a continuous period of more than fifteen years before the survey and entry by Johnson for the plaintiff in 1854.

*Henry Heywood* and *Heywood & Whidden*, for the plaintiff.

Between Hadley and Closson there is no evidence whatever to connect the title; not even the succession in possession, as the possession of Webster is not shown by any legal evidence, to have been the possession of Closson or Spaulding. The evidence of the defendant Austin in relation to what transpired between Spaulding and Webster, is merely declarations of a third party as to his title, without any legal foundation to make such declarations admissible evidence in support of that title. The declaration of Webster and Spaulding that Webster was the tenant of Spaulding, is a declaration in disparagement of his (Webster's) title, and would be admissible against the plaintiff if he claimed under a title from Webster, but not otherwise. *Pike* v. *Hayes*, 14 N. H., 19;

1 Green. Ev., § 109; *Davies* v. *Pierce*, 2 Term, 54; *State* v. *Catlin*, 3 Vt., 530. Spaulding's declarations as to his title at that time, are not admissible in favor of Austin, as they were not against his interest nor in disparagement of his title, but in favor of both, and he was not in possession of the premises. *Shepherd* v. *Thompson*, 4 N. H., 213; *Smith* v. *Powers*, 15 N. H., 546; *Davis* v. *Fuller et al.*, 12 Vt., 178; *Denton* v. *Perry et al.*, 5 Vt., 382; *Brackett* v. *Wait*, 6 Vt., 411; *Edgell* v. *Bennett*, 7 Vt., 534; *Bullard* v. *Billings*, 2 Vt., 309.

The sale in 1832 for taxes, under which the plaintiff claims title, was an interruption of Booth's possession. *Wallingford* v. *Hearl*, 15 Mass., 471; *Payne* v. *Hathaway*, 3 Vt., 212; *Wells* v. *Morse et al.*, 11 Vt., 9; Blackwell on Tax Titles, 547, 430. The tax-sale passed what right or title Booth then had, who was then in possession, to Wells, the purchaser in the tax-sale. Gen. Sts., ch. 84, § 26. Slade's Sts., p. 402, § 8. Taxes on non-resident lands are not a personal charge, but a lien on the land. *Rising* v. *Granger*, 1 Mass., 47; *N. Y. & H. Railroad Co.* v. *Lyon*, 16 Barbour, 651.

*George N. Dale* and *Ossian Ray*, for the defendants.

The testimony was competent for the jury to find or presume the existence of deeds from Hadley to Closson and from Closson to Spaulding and from Spaulding to the defendant Austin. *Townsend* v. *Downer*, 32 Vt., 183; *White* v. *Loring*, 24 Pick., 319; *Ryder* v. *Hathaway*, 21 Pick., 298; *Valentine* v. *Piper*, 22 Pick., 85; 1 Green. Ev., § 46; 1 Ph. Ev., 455. It matters not that we do not produce a formal deed from each grantor to his grantee, while we show a claim by each and every one under his predecessor by virtue of a color of title at least. Blackwell on Tax Titles, 364. The tax title did not interrupt the possession. *Reed* v. *Field et al.*, 15 Vt., 672.

The opinion of the court was delivered by

PIERPOINT, C. J. This is an action of trespass for cutting timber and wood on lot No. 53 of division 2 in the town of Brunswick. The plaintiff claimed title to the lot in question under a

Brown v. Austin et al.

vendue sale and deed by H. D. Schoff, collector, to Jared Wells, dated June 9, 1833, and from said Wells, through several subsequent grantees, to the plaintiff. The plaintiff put in evidence the records and proceedings of the collector's sale under an act passed in 1831, assessing a tax of three mills per acre on the lands in the county of Essex to build a jail. It was conceded upon the trial by the defendants, that all the proceedings referred to in said sale, were regular and legal, and that the collector's deed conveyed a valid title.

The defendants claimed title to the premises in question by possession, and introduced evidence tending to show that, as early as 1820, one Fuller went into possession of the lot, claiming to be the owner, and that he continued in possession until about 1825 or 1826, and was succeeded in the possession by his son-in-law Booth, who continued in possession until 1836, when he conveyed to one Tewksbury and left. This deed was put in evidence; also a deed from Tewksbury to one Hadley, dated March 11, 1837; also a mortgage deed of one undivided half of the premises, from N. H. Closson to J. S. Spaulding, dated Nov. 24, 1838.

The defendants also introduced parol testimony, which, they claimed, tended to show that Hadley deeded the premises to Closson, that Closson also deeded to Spaulding the other undivided half of the premises, and that Spaulding deeded the whole to the defendant Austin in 1841; that the two last named deeds were in this defendant's possession; that he neglected to get them recorded; and that they were destroyed by fire when his house was burned.

Upon the whole evidence, the defendant Austin insisted that, in making out his title by possession, he was entitled to the benefit of the adverse possession of Fuller and Booth.

The plaintiff claimed, and requested the court to charge the jury, " that there was no proper evidence in the case to be submitted to the jury, to connect the defendant Austin with the title of Hadley so that Austin could have the benefit of the possession of Booth and Fuller, if such possession should prove to be adverse, and also that any adverse possession prior to the tax-sale

under which the plaintiff claimed title, could not be available
against that title."

But the court charged the jury " that, if, from the evidence, they
believed that there were proper conveyances of said lot 53 from
Hadley to Closson, from Closson to Spaulding, and from Spaul-
ding to the defendant Austin, then Austin would be entitled to the
benefit of the possession of Booth and Fuller, if that possession
was adverse." The court also charged the jury " that an adverse
possession of the lot would not be interrupted by a sale of the
land for taxes ; that this would be the same as a sale of the land
by the true owner."

From the manner in which these points were made and dis-
posed of in the county court, it would seem that, in some aspect
of the case, it was important for the defendant Austin to connect
himself with the possession of Fuller and Booth prior to the tax-sale
and the collector's deed, so as to avail himself of such possession in
establishing his possessory title. Conceding, for the present, that.
the county court were right in submitting the question to the jury,
as to this defendant's having established a chain of conveyances
from Booth down to himself, the question then arises as to the
effect of the vendue sale and deed upon the title to the premises
and the claim and possession of Booth. The possession of Fuller
and most of the possession of Booth were prior to the sale and
deed of the collector, and Booth was at that time in possession.

The land in question is situated in the county of Essex. The
legislature, by an act passed in 1831, assessed and laid a tax of
three mills on each acre of land in the county of Essex, and directed
that the officers whose duty it was to collect said tax, " in collect-
ing and accounting for said tax, and in all things which relate to
the advertising, recording of proceedings, and the redemption
and deeding of land which may be sold, shall be governed by the
general law of the state pointing out the duties of collectors in
collecting moneys raised by tax for the purpose of making and
repairing roads and building bridges."

The general law of the state upon that subject, points out specif-
ically the course to be pursued in collecting a tax laid upon land
for the purpose named. It requires notice to be given to the land-

·owners by publication, etc. If any landowner shall neglect or refuse to pay his proportion of such tax within the time provided by law, the collector appointed by the act laying the tax, shall advertise such delinquencies, etc., and, in case any part of such tax shall remain unpaid at the time appointed for the sale, such collector shall proceed to sell at public vendue so much of such delinquents' lands as will pay such tax with costs, etc., and such collector shall, at the expiration of one year after the day of such sale, unless such land shall be redeemed, etc., make and execute a deed, or deeds, to the purchasers, *containing a covenant of warranty ; which deed or deeds shall be good and valid in law.* If the proprietor or proprietors of lands thus sold, *or any other person,* shall within the year appear and tender to such collector, etc., then the deed shall not be executed, etc. Gen. Sts., ch. 98, relating to land-taxes.

All the proceedings having been in strict conformity with the requirements of the statute up to and in the execution of the deed, by the collector, of the premises in controversy in this case, the statute declares that such deed shall be " good and valid in law." The question then arises as to what extent, and for what purposes, it is to be regarded as good and valid. The county court in their charge to the jury seem to have regarded it as good only to the extent of transferring the title of the true owner, and as not affecting the interest or claim of a person then in the actual possession of the premises adversely, and claiming title as against the owner ; thus treating the collector's deed the same as though it had been a deed from the owner. In this we think there was error. The language of the statute is general : it does not qualify nor limit the operation of the deed in any respect. It " shall be good and valid in law," is the language, and this must be held to mean good and valid for all the purposes for which it was intended, according to its terms. The object of the sale is not to transfer the title, right or claim of any particular person or persons. It is not sold because any particular person owns it, or claims it, neither is it sold as the property of any particular person ; but the object of the sale and deed is to convey to the purchaser a perfect title to the land as against all claimants, and

the statute requires that the deed shall contain a covenant of warranty.

This, we think, is also the legitimate legal effect and operation of the whole proceeding. The law lays the tax upon the land, and fixes the amount specifically at so much per acre, without reference to the owner or claimant and without regard to its value. The tax is not against the owner or occupant or any other *person*. It imposes no personal obligation or duty on the owner, and creates no personal liability. The statute provides no means of enforcing the payment of a tax of this character by proceeding against the body or the property of any *person*, as is the case when a tax is assessed upon the grand list in the ordinary way. In this latter case, the tax is against the person and may be enforced against the body or property of such person; and in case real estate is seized and sold for the payment of such tax (except in the case of non-resident landowners), the statute expressly declares that the collector's deed shall be sufficient to convey to the purchaser a title against the person for whose tax it was sold, and all claiming under him. This is probably the only effect such a deed would have, if the statute was silent on the subject, as the land is sold to pay a tax against the owner, and his title or that of those claiming under him, is all that could be legally sold. But in the case of a tax like the present, the only mode of enforcing the collection is by a sale of the land on which the tax is laid, or so much of it as is necessary to pay the tax and legal expenses. All the proceedings are substantially against the land. The landowners and all others are notified by publication of the existence of the tax, and the time when payment must be made. If payment is not made, notice in like manner is given of that fact, and of the time appointed for the sale. If the land is sold, the owner *or any other person* may, within one year, redeem the land by paying the tax and expenses. Any person, whether owner, occupant or claimant, wishing to save his interest therein, can do so only by paying the tax. If he neglects to do so and the land is conveyed according to the sale, all his right or interest therein is thereby extinguished, and the purchaser takes a good and valid title against all persons; and this title he does not take from or

through the owner or claimant or any other *person.* It is not dependent upon any former title. He gets his title by operation of law. It is a new and independent title standing alone, supported only by the statute in virtue of which it was conveyed to him. The effect is to extinguish all prior claims, whether based upon title or possession; hence the defendants can not avail themselves of the possession of Fuller and Booth prior to the collector's deed, to aid in establishing a title against it.

From the case as stated, we see no error in the court's submitting the question to the jury as to the conveyances from Hadley to Closson and from Closson to Spaulding.

Judgment reversed, and case remanded.